UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

STACEY SABOL-KRUTZ, an individual,

    Plaintiff,

v.

QUAD ELECTRONICS, INC. d/b/a CABLCON, a Michigan corporation,

    Defendant.

No. 2:15-cv-00201-MCE-AC

**MEMORANDUM AND ORDER**

Through this action, Plaintiff Stacey Sabol-Krutz ("Plaintiff") sues her former employer, Defendant Quad Electronics ("Defendant"). As a condition of Plaintiff's employment with Defendant, Plaintiff signed a non-compete agreement ("Non-Compete Agreement"). Defendant has terminated Plaintiff's employment and Plaintiff now seeks a declaration that the Non-Compete Agreement is invalid and monetary damages for unpaid commissions earned during the course of her employment. Before the Court are Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 8) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 11). For the reasons that follow, both Motions are DENIED.[1]

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefing. E.D. Cal. Local R. 230(g).

**BACKGROUND**

Plaintiff began working for Defendant in December 2007 as a sales representative. Compl., ECF No. 1, ¶ 6. At the start of her employment, Plaintiff signed a contract that included, in relevant part, a Non-Compete Agreement. Id. ¶¶ 9, 10. The Non-Compete Agreement contains a non-compete provision for a period of twelve months after termination and includes a list of nineteen companies that Plaintiff agrees not to be employed with during that period. See Non-Compete Agreement, ECF No. 8-2, at 29. The Non-Compete Agreement did not contain a choice of law provision.

Plaintiff alleges that Defendant urged her to move to California in 2011 to "essentially run [its] West coast operations." Id. ¶ 7. Defendant, however, contends that the Plaintiff requested to move to California in order to establish residency so that her daughter could pay in-state tuition at California universities. Def.'s Mot. to Dismiss, ECF No. 8-1, at 3. While the reason for the move is disputed, Plaintiff does not dispute that throughout her employment, at least ninety-nine percent (99%) of her business for Defendant concerned accounts outside of California. Id. According to Defendant, "Plaintiff was denied relocation expenses because her move was not business related." Id.

In August 2014, Defendant terminated Plaintiff's employment. Compl. ¶ 11. Plaintiff subsequently accepted a position at Defendant's direct competitor, Great Lakes Wire and Cable. Id. ¶ 12. Great Lakes Wire and Cable is a Michigan Corporation and is one of the nineteen companies identified in the Non-Compete Agreement. Id. ¶ 12; Def.'s Opp'n to Mot. for Summ. J., ECF No. 14, at 2. In January 2015, counsel for the Defendant sent a letter to Plaintiff reminding her of the provisions of the Non-Compete Agreement and demanding that the Plaintiff cease and desist in her interaction with Great Lakes Wire and Cable. Compl. ¶ 13. Plaintiff did not comply and Defendant brought suit against Plaintiff in Michigan state court to enforce the Non-Compete Agreement on February 12, 2015.

On January 26, 2015, Plaintiff filed this action against Defendant seeking a declaration that the Non-Compete Agreement is invalid and monetary damages for unpaid commissions earned during the course of her employment. Plaintiff claims that her unpaid commissions are "well in excess of $75,000." Id. ¶¶ 3, 24. Subsequent to the filing of the Complaint, Defendant filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction contending that the amount in controversy cannot possibly exceed the requisite $75,000. ECF No. 8 at 1. Plaintiff then filed a Motion for Partial Summary Judgment stating that, at this early stage in the litigation, the Court should be able to grant declaratory relief prohibiting enforcement of the Non-Compete Agreement given California's strong public policy against enforcement of non-compete agreements. ECF No. 11 at 2-3.

## STANDARD

**A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction over civil actions. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). The burden of establishing federal jurisdiction rests upon the party asserting jurisdiction. Id. To establish federal subject matter jurisdiction, a plaintiff must prove the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332.

The party opposing the motion has the burden of proving that subject matter jurisdiction does exist, and must present any necessary evidence to satisfy this burden. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). If the plaintiff's allegations of jurisdictional facts are challenged by the adversary in the appropriate manner, the plaintiff cannot rest on the mere assertion that factual issues may exist. Trentacosta v. Frontier Pac. Aircraft Ind., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987). Furthermore, the district court may review any evidence necessary, including affidavits and testimony, in

order to determine whether subject matter jurisdiction exists. McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988); Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979). A court may dismiss an action "when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction." Pachinger v. MGM Grand Hotel-Las Vegas, Inc., 802 F.2d 362, 364 (9th Cir. 1986). However, in order to grant a motion to dismiss pursuant to Rule12(b)(1), a court must find to a legal certainty that the plaintiff cannot recover an award that will meet the amount in controversy requirement. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). If the nonmoving party fails to meet its burden and the court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

**B. Motion for Partial Summary Judgment**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A court may grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex,

477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

**A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

In its Motion to Dismiss, Defendant challenges Plaintiff's assertion that she is entitled to damages in excess of $75,000. Defendant contends that it is not possible that

Plaintiff is owed any back compensation because at the time of her termination it paid Plaintiff more than she should have received by including compensation for orders she initiated but that were never completed. Defendant provides an extensive description of the calculations it used to determine that Plaintiff was owed $40,591.03 in gross and was paid the net amount of $21,526.56 after deductions. Def.'s Mot. to Dismiss at 3-6.

Contrary to Defendant's calculations, Plaintiff contends that she is still owed the substantial sum of $1,138,152. Pl.'s Opp'n, ECF No. 13, at 3. Plaintiff alleges that Defendant, through its agents, transferred her off of significant accounts that she secured and forced her to split commissions with other managers on accounts that she handled, resulting in significant losses of profits. Id. at 2, 4. In her Opposition, Plaintiff supplies four specific accounts with corresponding commissions she contends she is owed. ECF No. 13-1, at 2.

In response, Defendant contends that Plaintiff's accounts were not transferred and that some of the accounts she listed even predated Plaintiff's employment with Defendant. ECF No. 16, at 2-4. Defendant further contends that the over one million dollars the Plaintiff is seeking would place her earnings at a disproportionately high level of compensation in relation to other account managers so "as to be shocking in Defendant's business culture." Id. at 1, 5.

Based on the substantial evidence that Defendant has submitted about the accounts in question, the Court agrees that it appears unlikely that Plaintiff will recover over one million dollars through this action. However, this Court cannot find to a legal certainty that the Plaintiff cannot recover $75,000. Only a few instances clearly satisfy the legal certainty requirement:

> (1) when the terms of the contract limit a plaintiff's possible recovery to less than the jurisdictional amount, (2) when a specific rule of substantive law . . . limits the amount of money recoverable by the plaintiff to less than . . . the requirement, and (3) when independent facts show that the amount of damages claimed has been inflated by the plaintiff merely to secure federal court jurisdiction.

Pachinger, 802 F.2d at 364.

In the present case, there is no demonstrated contractual limit to Plaintiff's recovery, nor is there any substantive legal rule that limits her potential damages to less than $75,000.  Defendant contends that Plaintiff's support for damages in excess of one million dollars is not made in good faith.  ECF No. 16 at 4-5.  Defendant cites two examples of circuit courts finding to a legal certainty that the amount in controversy requirement could not be met.  As will be discussed below, both of these cases illustrate instances where plaintiffs were barred legally or otherwise from a damage award above the requirement in 28 U.S.C. § 1332.

In <u>Esquilin-Mendoza v. Don King Productions</u>, 638 F.3d 1 (5th Cir. 2011), the Fifth Circuit found that the plaintiff's pleading of an amount over the statutory requirement was made in good faith, but that evidence produced by the defendant definitively demonstrated that the damages she sought (compensation for seizure of her vehicle) could not exceed the reasonable rate of a rental car, $22,500.  As potential damages for her only viable claim, this figure fell so far below the statutory requirement of $75,000 that the Fifth Circuit was able to find to a legal certainty that plaintiff could not allege damages over $75,000.

In the present case, Plaintiff has alleged damages over one million dollars with more claims to be filed.  Defendant offered extensive rebuttal evidence showing that Plaintiff was not entitled to damages concerning the accounts she cited.  Defendant's evidence may be accurate, but declarations and pleadings fall well short of the requirement for this Court to be legally certain that Plaintiff cannot recover what she alleges.  In <u>Esquilin</u>, the Fifth Circuit could put a tangible number on the only possible damages the plaintiff could receive based on her claims.  There is no concrete measure of damages, based on the pleadings, that this Court could divine at this stage of the case.

Defendant also cites <u>Christensen v. Northwest Airlines, Inc.</u>, 633 F.2d 529 (9th Cir. 1980).  In that case, the Ninth Circuit found that the plaintiff accepted alternative air transportation after being "rudely bumped" from her flight, which consequently barred her

from seeking damages for the majority of her claims. Her only remaining claim was a tort claim under Washington state law, which did not allow punitive damages for tort claims absent statutory authority. As there was no statutory authority allowing plaintiff's punitive damages claim, it was clear to the Ninth Circuit that the plaintiff alleged the damages solely to obtain federal jurisdiction. In the present case, there is no relevant limit to damages from California or Michigan state law, and there is not a clear indication that Plaintiff alleged over one million dollars in damages solely to obtain federal jurisdiction.

Here, the Court cannot conclude to a legal certainty that Plaintiff alleged damages from her breach of contract claim for the sole purpose of obtaining this Court's jurisdiction. Accordingly, Defendant's Motion to Dismiss is DENIED.

**B. Motion for Partial Summary Judgment**

Soon after Defendant filed its Motion to Dismiss, Plaintiff filed a Motion for Partial Summary Judgment asking the Court to find that the Non-Compete Agreement she signed when she began her employment with Defendant in Michigan is unenforceable. ECF No. 11-2 at 4. The outcome of this issue depends on whether the Court applies Michigan or California law.

Michigan courts have repeatedly held that reasonable agreements not to compete subsequent to employment are enforceable. See Hubbard v. Miller, 27 Mich. 15, 21 (1873); see also Cardiology Assocs. of Sw. Mich., PC v. Zencka, 400 N.W.2d 606, 607-08 (Mich. Ct. App. 1985). The Legislature explicitly permitted reasonable agreements that restrict competition subsequent to termination of employment in Michigan Compiled Laws section 445.774a, and Michigan courts are given the ability to judge the reasonableness of the agreement. Bristol Window & Door v. Hoogenstyn, 650 N.W.2d 670, 674 (Mich. Ct. App. 2002).

In California, however, covenants not to compete are generally unenforceable. The California Supreme Court has explained that section 16600 of the Business and Profession Code demonstrates a "settled legislative policy in favor of open competition

and employee mobility." Edwards v. Arthur Anderson LLP, 44 Cal. 4th 937, 946 (2008). This policy "ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice." Id. at 946.

Plaintiff argues that, given her residency and work in California, this Court should invalidate the Non-Compete Agreement because it is contrary to California public policy. ECF No. 11-2 at 4-5. Defendant contends, however, that since the contractual agreement was entered into in Michigan for work at a Michigan-based company, Michigan law should apply.[2]

When a federal court hears a case on diversity jurisdiction, it must look to, and apply, the choice of law rules for the state in which it sits. Paracor Fin., Inc. v. GE Elec. Capital Corp., 96 F.3d 1151, 1164 (9th Cir.1996). Thus, this Court must apply California "choice of law" rules to determine whether Michigan or California doctrine on non-compete agreements is appropriate. Choice of law rules on this issue are addressed by both statute and common law.

**1. Statutory Choice of Law in California**

California interprets contracts "according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law . . . of the place where it is made." Cal. Civ. Code § 1646 (West 2015). There is no dispute here that the contract was entered into in the State of Michigan and that it is silent regarding a place of performance. Therefore, under this statute, Michigan law should apply.

**2. Common Law Choice of Law in California**

Under common law, California applies a so-called "governmental interest" test to decide choice of law cases. Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th 95, 107 (2006). Applying this test involves evaluating "the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest

///

---

[2] As previously noted, the Non-Compete Agreement did not include a choice of law provision.

would be more impaired if its policy were subordinated to the policy of the other state." Id. at 108 (internal citation and quotation marks omitted).

Plaintiff contends that because she is currently a resident of California and because Defendant continued to employ her while she lived in California for three years, California has an interest in invalidating this Non-Compete Agreement. ECF No. 11-2 at 5. Plaintiff cites to three California District Court cases in which covenants not to compete executed in out-of-state jurisdictions were deemed unenforceable under California law. See Gallagher & Co. v. Lang, No. C 14-0909 CW, 2014 WL 2195062 (N.D. Cal. May 23, 2014); Arkley v. Aon Ins. Risk Servs., Inc., No. CV 12-1966 DSF, 2012 WL 2674980 (C.D. Cal. June 13, 2012); Davis v. Advanced Care Technologies, Inc., No. Civ. S-06-2449 RRB DAD, 2007 WL 2288298 (E.D. Cal. Aug. 8, 2007). Yet, all three cases are distinguishable.

In Gallagher, the employee was hired to work exclusively in California and did all of his work within the state. 2014 WL 2195062 at *3. In Arkley, the employees lived in California for the entirety of their employment and only periodically travelled to Illinois to visit the company headquarters. 2012 WL 2674980 at *3. In Davis, the employee lived in California for the entirety of his employment. Moreover, the employee was employed as the Regional Sales Manager for the western United States, which implies that a significant portion of his operations was in California. 2007 WL 2288298 at *2.

In the present case, Plaintiff entered into her employment contract in Michigan and worked in that state for a number of years before moving to California. Her business-related contacts with California involved no more than one percent of her overall business activity. Moreover, she sought employment with a direct competitor to Defendant that is not licensed to do business in California and also has its principle place of business in Michigan. See ECF No. 14 at 6.

The facts of this case are much more analogous to those in Shorter v. Peaches Uniform, Inc., No. 2:10-cv-2232-MCE-GGH, 2012 WL 3882322 (E.D. Cal. Sept. 6, 2012). In Shorter, this Court held that a Non-Compete Agreement entered into in Texas

was enforceable when the plaintiff's only connection to California was her residence. This Court explained, "Texas was where the oral employment contract was negotiated and formed, as well as the headquarters for Peaches and the location where Shorter submitted her work. The only connection to California is Shorter's residence, which is otherwise unrelated to her employment." Id. at *11.

Almost identically to the situation in Shorter, Plaintiff conducted most of her business activity outside of California with a large portion coming from Michigan, and she entered into the Non-Compete Agreement in Michigan with a Michigan company. After she was terminated by Defendant, Plaintiff sought and accepted employment with another Michigan company. Her only contact with the state of California was her residency and the roughly one percent of business she derived from California accounts. Therefore, the Court finds that California's interest in applying its law to this case is low.

Additionally, the Court finds that California's interest in ensuring that its citizens enjoy the highest level of mobility possible in seeking employment would be better served by the application of Michigan law to this case. Companies from other states would be less likely to allow their employees to transfer to California if they knew that doing so would invalidate bargained-for clauses of the employee's original employment contract. Further, there is nothing in the Non-Compete Agreement that limits Plaintiff's ability to seek employment in California or elsewhere so long as it is not with one of the nineteen listed companies. Therefore, California's interest in employing its citizens is not seriously limited by the Agreement because Plaintiff had ample opportunity to seek employment elsewhere.

The highest interest in this case is that of the state of Michigan, which has an interest in protecting the integrity of contractual agreements entered into within its borders between Michigan residents and Michigan companies. Defendant and Plaintiff's new employer, Great Lakes Wire and Cable, conduct a large portion of their business in Michigan and both are headquartered there. Ruling that non-compete agreements

///

entered into in Michigan with Michigan companies are unenforceable would undermine the state's authority to regulate its businesses and citizens.

Given that California only has a limited interest in the issue presented by this case and Michigan has such a remarkably higher interest, the California common law choice-of-law test also results in the application of Michigan law.  Thus, the Court cannot determine the Non-Compete Agreement is invalid at this stage of the litigation and Plaintiff's Motion for Partial Summary Judgment is DENIED.

### 3. Abstention

Not only does the Court decline to grant Plaintiff summary judgment on this claim, the Court sua sponte dismisses Plaintiff's claim for declaratory judgment under the doctrine of abstention.[3]  When evaluating whether to abstain from adjudicating a claim for declaratory relief, courts look to (1) the desire to avoid needless determination of state law issues, (2) the discouragement of forum shopping, and (3) avoidance of duplicative litigation.  R.R. St. & Co. v. Transp. Ins. Co., 656 F.3d 966, 975 (9th Cir. 2011).

As previously stated, Defendant brought suit against Plaintiff in Michigan state court in order to enforce the Non-Compete Agreement.  It is the Court's understanding that the Michigan suit is still pending.  Instead of challenging the validity of the Non-Compete Agreement in Michigan, Plaintiff filed suit in California seeking a declaration that the Non-Compete Agreement was invalid under California law.  This is a classic case of forum shopping, which this Court has no interest in encouraging.  Assessing the reasonableness of this Non-Compete Agreement simultaneously in two separate jurisdictions is duplicative and wasteful of judicial resources.  In the best case scenario, both courts come to the same conclusion.  In the worst case scenario, contradictory results are reached, creating the need for further litigation that could otherwise be

---

[3] The discretion of whether to proceed with a declaratory relief action is vested in the Court. See Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1223 (9th Cir. 1998); see also Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995) ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action.").

avoided through abstention. Or, in what appears to be happening here, the Michigan court is forced to wait for a determination by this Court before it can proceed. The Michigan court sits in a better position to adjudicate the reasonableness of the Agreement under Michigan law, and this Court abstains from interfering with that process. Accordingly, Plaintiff's first claim for declaratory relief is DISMISSED.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF No. 8) is DENIED, Plaintiff's Motion for Partial Summary Judgment (ECF No. 11) is DENIED, and Plaintiff's first claim for declaratory relief is DISMISSED. The case proceeds on Plaintiff's second claim for breach of contract only.

IT IS SO ORDERED.

Dated: July 6, 2015

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT